I'm here today to ask the court to decertify a more or less nationwide class of aircraft owners who have properly functioning aircraft engines. It seems to me, just trying to look at this in terms of what we're supposed to decide, how do we decide whether there are state law variances that are insuperable in a class action? And, you know, there's a couple ways to do it. Some way the judge did it here, you use a technique that you apply just one state law, or you could then, you could have, you could show there's significant differences, but you could deal with them in subclasses. And if there are variances, how do you manage them? So, how do you decide whether there, I mean, how do we, what is your main argument, that there are variances that were not taken into account by the district judge here, and never did the analysis, that would call for a remand, or are you saying that the variances are so significant and so unmanageable that we really have to say that this class cannot be certified? The latter, Your Honor. I mean, certainly to the extent that, as I mentioned in my brief, the Uniform Commercial Code is not applied uniformly. And part of this is a function of plaintiffs in search of a theory. Originally, we had consumer protection statute claims. We had negligence at one point. Ultimately, they... Well, you're down to two now, right? Yes, merchantability and unjust enrichment. And again, for example, on unjust enrichment, it's a fairly universally accepted common law doctrine. However, the law is different in different states. There are different requirements. Some states require fraud. Some states do not require any other type of conduct. The problem in this case, of course, is that the benefit conferred is profits. And profits generally are not considered a proper basis for unjust enrichment unless they belong to someone else. So apart from other issues, the only other issue would be merchantability. And the standard varies from state to state. For example, in Pennsylvania, you know, the judge here just looked at privity. But in Pennsylvania, by way of example, the theory of... What evidence did you present to the district court about state variations? We just briefed the issue, Your Honor. You talked about Delaware and Maryland? I don't remember off the top of my head if I did. It's a strange way that all of this came up. The litigation was originally filed in July and September of 2006. The cases were stayed because there was another lawsuit in California filed by the same council on behalf of a class of California plaintiffs. MDL motions were filed to try to get the two cases together. Proceedings were stayed after the MDL was denied by the panel. Judge Savage had oral argument, at which time the plaintiffs agreed to rebrief... Or they agreed to file an amended complaint. So we started all over again after oral argument and never had oral argument again. So I don't know. I think basically what we had argued or the plaintiffs had argued was sort of what the district judge did here, which is this broad, here's the law across the country sort of approach. So it wasn't briefed perhaps in the normal course that you would expect in a proceeding like this with someone all over the place. But in any event, on... For example, let's just take implied warranty of merchantability. What specific variation in law concerning this standard did you present to the court on this issue? On merchantability, I mean, again, I think we talked about in the briefing privity and the defenses that are available in a merchantability case on an individualized basis. But I think the issue too is, and it also gets back to the constitutional inquiry, not just the mechanics of how the judge did or did things rightly or wrongly, but there is an individualized choice of law requirement and you look at the reasonable expectation of the plaintiff. So if you're in a jurisdiction like New York or Kentucky or Oregon, where unlike Pennsylvania, the defect for purposes of merchantability has followed strict liability law. The law in those jurisdictions is defect is related  So I think that to answer your question, we certainly briefed a lot of this. I think we briefed it generally, to be perfectly honest. I mean, I believe I pointed out examples. And I appreciate the candor, because part of the problem I'm having is not necessarily... I mean, this might be a good class action. And I'll ask this question of your opposing counsel. But I'm just not sure. Because I'm not sure your way either. Because I think there needs to be more evidence. I mean, clearly you can have variances and still have a class action. Well... I just don't know if the variances are enough and that they're not manageable that we should weigh in.  and look at this particular class of plaintiffs to give your honor what appears to be missing. These are no malfunction cases. Everyone's engine is operating. In this population, there has not been a malfunction. So the question becomes... But the claim is that there were a number of planes that the crankshafts, they knew something in 2002 and they weighed it to 2000. They phased it out in order not to have a, well, as they call it, unjust enrichment in order... Well, they phased it out over years in order to make sure that they didn't have the big hit up front. The... Okay. So that's a claim. And they claim that, okay, it's implied warranty of merchantability and unjust enrichment. You come in and you say there are variances. But I can't tell you based on what you said that there's enough of a variance and that even if there are variances that it's not manageable. What is the answer to that question, your honor, is what is the defect? Here, you have a population of airplanes, some of which have had these crankshafts for 11, almost 12 years. They are still flying. In the complaint... Thank goodness they're still flying. Thank goodness they're still flying. And on the other ones, it was a limited population relating to higher horsepower engines where in the back of the crankshaft, there were fatigue cracks in the area of highest stress. We have not had this in this population. They're continuing to fly. Today, in Pennsylvania, for example, even if we bypass the choice of law issue when we apply Pennsylvania law... We're going to get the choice of law at some point here. Right, but I mean, again, if Pennsylvania law applies, let's say I don't dispute that point. If Pennsylvania law were to apply, the normal way you prove a defect is by evidence of malfunction, not a single malfunction. So you have to prove a specific defect that's capable of class-wide proof. And the issue is, what is the defect and how do you do it? In the complaint, they allege vanadium, which is a naturally occurring element in steel. But the problem is it was only... These crankshafts were manufactured from 1997 to 2004. Vanadium was only at... The spec was only added. It was actually controlled to be under the aerospace material specification. It was only controlled for a two-year period. So if that's the theory, it's not subject to class-wide proof because you have an entire body of crankshafts that don't have a vanadium-specific standard. Then the other issue is that there was a change in the heat specification, but it wasn't for the entire time period. So that's also not capable of class-wide proof. And then the only other allegation you're on... Well, there's two other allegations. One is the question that there's this material defect because of the overheating by the forger. But you'd have to look at each and every one of these crankshafts because the problem is the FAA who regulates aviation safety said, go out there, get those crankshafts out of service. We're not grounding them. We don't see the defect, but records were destroyed. We don't know if all of these crankshafts were overheated or some of them, so retire them. Take till 2014, but get them out of service. So Lycoming did what the FAA said, but the problem is we don't know if an individual crankshaft has this metallurgical defect. And you'd have to look at each and every one of them, like the Sandman case, where you'd have to look at each and every one to see if the paint had delaminated, which was the theory for the class action. So the only other issue is what the plaintiffs allege in their complaint. And what the plaintiffs allege in their complaint is that the ordinary purpose for which these crankshafts and engines are used are to turn the propeller. And that's what they're doing. So if they're turning the propellers, you can't look, you can't say that this defect exists in every one. Vanadium wasn't added at the whole time. The temperature wasn't adjusted at the whole time. You can't ever, from a plaintiff's perspective, prove a defect for purposes of Pennsylvania law. And I have individualized. Or the possibility or perceived possibility of a defect such that there should be a company directive going out and then ultimately a mandate from the federal agency, which is what happened here. That's exactly what happened. And so, Michael, if you had five minutes, please. Yeah. So it isn't a question whether the crankshafts are or not bad. Thank goodness they haven't gone out. The question here is that people believe who are in a position to know that there's a possibility that there could be a failure and that corrective action needs to be taken. And the plaintiffs are saying that the corrective action was known several years ago, and that's when the action should have been taken, or at least the option offered for the action to be taken. Why don't you address choice of law, if you would, please. Choice of law to the extent that, I mean, I believe in my brief, I outlined the contract analysis. I suggested that the use of Section 148 was improper. I missed a couple cases where other judges sitting on the Eastern District of Pennsylvania had applied it. There's a case, Hammersmith. Hammersmith. CIG. Right. I don't think anybody mentioned that in the briefs, and I don't believe that the court below mentioned it. Shouldn't the court below really have mentioned that? And, Your Honor, I apologize. I don't know the case, so. I mean, that's certainly a fault of counsel. It's a decision that was on the panel that was written by, I believe, Judge Bailson, and it's a pretty thorough discussion of choice of law. And it came out about two years ago. Wait, the case pointed out that Lacey and Burr-Schuling, I think it was the other one, really was a bit of a conflict in what other panels in this circuit had said, and it really wasn't mentioned. All right, well, you know, counsel, one thing that worries me. Yes, sir. I see some of the problems you're talking about, but you begin to wonder, in spite of the Class Action Fairness Act and all of that, you begin to wonder if it's ever possible to certify a nationwide class based on state law claims. It's certainly appearing less and less likely, and the plaintiffs here didn't give Judge Savage anything to work with. We never saw, you know, they said we suggested choice of law subclasses. Well, what choice of law subclasses? They never went in. I reread the plaintiff's brief. I don't know if the defense- What's changed since 2003 is that it's more, the judge, the district judge, needs to do a more searching inquiry. That's essentially what's changed. And then, I mean, obviously CAFA in 2005, you would like more issues, you know, done in federal court. But it's just, and that's sort of where we are. Is there enough analysis done based on the change of the standard that we look to for what a district judge must do for us to make an informed decision? And, Your Honor, I would suggest to you that there is the analysis in there, and that the informed decision is that this class should not be certified. But you yourself said that this stuff was dealt with, matters were dealt with generally, not specifically. And, again, that's in part a function of how the plaintiffs presented their version of the issues. And to the extent that I am responsible for what I have filed, I am solely responsible. I have no one else to blame but me. So rather than saying that we shouldn't certify this, similar to what the judge in Eastern District of California did, should we just not remand it? He decertified, actually. I'm decertifying, I'm sorry. Well, Your Honor, the panel could certainly decertify it, but I think you're still going to have the same problems that were identified by the district judge. We never got there here. I mean, there, I think the decertification was because there were many individual claims, or it was the individual claims, the common issues didn't predominate over the individual claims with respect to damages. Isn't that right? That's correct. And, again, it was a class of California plaintiffs only who are now out of court because the case has settled and it's been decertified. So the other California plaintiffs are gone. But, again, even though they were under California statutory theories, basically the same underlying facts, the same underlying claims, and the same underlying problems on inability to prove issues by virtue of class-wide proof. Thank you. Thank you very much. Mr. Rota? Good morning, Your Honors. May it please the Court. Wasn't the district court wrong in saying that the defendant was incorporated in Pennsylvania and that the crankshafts were manufactured in Pennsylvania? That's incorrect, isn't it? Those were incorrect, but I would suggest, Your Honor, that material. The defendant, Lycoming, operates its aircraft engine business out of Lycoming, Pennsylvania near Williamsport. Every action of Lycoming that is at issue in this case, every decision of Lycoming, happened in Lycoming, Pennsylvania, there. So, technically, he was wrong about the placement of incorporation, but not practically wrong for the interest analysis, which I suggest. Yeah, the crankshafts were made in Texas. Texas, yes. That's where the metal was put in them. Right. That's defective, right? Right. They were then put in the engines here. You got it. And how about the legal analysis? Hammersmith, you familiar with that? Your Honor, I must confess to the saying, and I'm sorry, I'm not familiar with that. No. But that in and of itself, I think Hammersmith came out before the It did. The district court decision. It did. Very shortly before, but it did. Your Honor, we will have to look at that, and I apologize for that. Shouldn't we be sending that back so the judge involved in this case could look at all that? If it were necessary, Your Honor, but may I suggest that it is not for a reason that I think, I fear it gets lost in the discussion about definitions of claims under various states' laws. Ultimately, the choice of law issue is an interest analysis. That's Pennsylvania's ultimate issue, is there, and what's the weighing of the interest. It's also the due process issue. But Hammersmith says you don't even get there sometimes. Well, go ahead. Yeah, no, no. I'm just picking up on Judge Van Korpen's point. If, look, if there are relevant variations, how can we be assured that application of Pennsylvania law, we know there are variations, and one of the techniques sometimes judges use is, look, we're just gonna take the place where the matter was filed under Claxon, and that will suffice. And then the other side says, okay, but there's relevant variations. How can we be assured that the application of Pennsylvania law in the aggregate action, this aggregate action, would not alter individual substantive rights? Your Honor, if we looked at the different definitions, there might be different outcomes, but again, I suggest respectfully that the issue for the due process is the ultimate fairness or arbitrariness. But if the court needs to do this, quote, searching inquiry, close quote, and doesn't even take into account, for whatever reason, maybe it just wasn't brought to the judge's attention, the Hammersmith case, I mean, we're sort of, aren't we sort of making it up as we go along? Well, Your Honor. It doesn't feel real comfortable. Perhaps the inquiry is necessary. If I might suggest another consideration in addition to what Your Honors have said here, it is this, that the application of Pennsylvania law to Lycoming is fair. They do business here. Everything that they did, they shipped them out here, they got the money here, they made the decisions whom to notify and whom to compensate here. The application is also fair to the class members. Nobody is being forced to proceed under Pennsylvania law in this case. Every one of these class members, if the certification were to stand, would have the opportunity to opt out. If they like their state law better, they can do so. As a practical matter, a class action is the only way this class will ever get compensation if compensation is due. The amounts at issue for the 3,700, a very small class, are too small to warrant individual cases. Nobody will take it on a contingency and nobody in his right mind would pay it. You may be absolutely right. That's one of the factors that you look to under 23A and B3. The question here is, in order, when you have these kind of variances, is this, is it manageable? And I just don't think there would, I'm speaking only for myself, it appears to me that there just wasn't enough analysis done for us to make an informed decision. Your Honor, I suggest that with the analysis, and we did, it's in the record. By the way, I'm not saying you don't win in the end. You might. And we did submit, and it's in the appendix set of pages, I can give you the exact site, I think it's 717 through the 800s, the surveys for the two claims that were submitted to the court. And what Your Honor suggests, perhaps a subclass special interrogatory approach. The surveys were just charts on two issues. On warranty, there were substantive elements in privity. Is that correct? Yes. Yes. But weren't there other issues that one could have brought up? Well, we don't believe so, Your Honor, and the absence of anything by way of rebuttal from the defense to suggest that there was any more pressing issue than privity, we think was an admission by them that there really isn't. That you can look at different words, but the bottom line thrust of the claim in the states remains the same. Now again... Of the 49 states that are involved, because we're excluding California, Pennsylvania is a no privity state. How many states of the 49 are privity states? 16. There are 16, I believe, 14. I'm sorry, 14 others require privity. So isn't that pretty significant? No, Your Honor, for this reason, if I can get to it. When we look at whether other states have a difference in their definition, that's the first question. The question though is, will it offend their interests if you apply Pennsylvania's version of the law rather than theirs? And I suggest in this case it doesn't. A state has an interest in controlling the outcome of a lawsuit against one of its citizens, whether it's in that state's court or in another court. But the state doesn't have an interest in chasing its citizens to limit them in their recovery if they file suit in another state court against a non-resident party for conduct that emanated from outside the home state. It's not like you have a driver's license that says, I'm from Pennsylvania, therefore there's privity, and I can only recover in a state that allows the same thing. It's fair to Lycoming to have Pennsylvania's laws applied. They can't claim their expectations were frustrated. Shouldn't the district judge be doing this analysis? I mean, I don't doubt that we could do it, but I mean, you're suing on behalf of owners. Yes. But there are people that lease planes. Some planes have had maintenance done. Some haven't. Some crankshafts have already been replaced. I don't know. I just think this needed to be looked at better than it was. Your Honor, if I might address the last point. What you say is true about variations, but they don't make a difference. Each of these plane owners was notified in 2006 that their plane has a crankshaft that can't be trusted, that it came from a bad batch and may have a condition that could cause a plane literally to drop out of the air. They have to get it replaced, and that mandatory replacement means they're stuck with costs because Lycoming in this generation of notices is not covering all the costs as it did for the first two calls in 2002 and 2005. So whether they've had maintenance done on it, or whether they've had, whether it's new or used. Owners would include lessees? No, it would be the ultimate owner of the plane. Your Honor, whoever is charged with the ultimate responsibility for the upkeep of it. Suppose the lease put the maintenance... Then it would be for the lessee. Whoever is charged in the relationship with bearing that cost. But why does it say that, that the lessee would be considered an owner? Well, in the class definition. I have to get the class definition. Is it? I'll take your word for it. That's okay, sorry. I think ultimately, in the sorting out of responsibilities between the leaseholder and the owner, the private arrangement will determine who ultimately foots it. But the owner in the first instance may have to foot that bill. The fact is, the hard fact is that there is a cost that this bad batch has imposed on the class. And the question of this case is, who bears that cost? Should it be Lycoming, since it was their bad batch to work out with the supplier? Or should it be the end users who did nothing wrong and find themselves with a cost that runs between $11,000 and $29,000 now, and after February 9th, or February 21st of next year, is going to run between $25,000 and $36,000 per pop? It's a significant hit. And the owners, the issue is, should they have to bear? And isn't this something that lends itself to a uniform application where participation is voluntary? And at Lycoming's side, they're just having the laws enforced against them of the state where all this happened. You're right, that may be the case. You may be correct. But in order to get there, it's pretty clear since 2003, the court has to go through this, quote, searching inquiry. And it's when that's done that it really comes up for appeal. It's like you keep coming to us and saying, okay, decide it based on a little information. And if we did that, it would seem to me that that would be run against the grain of what we've been asked to do for the last five years. Your Honor, I understand the point. My only response would be this, that if we do this more searching inquiry, and even if we were to come and say there are these heretofore discussed variations, which I don't think there will be, but even if we did, the question ultimately would be, is it still fair to apply as among the choices for handling this case, one of which would be different subclasses by state law? You're absolutely correct after you go through the analysis. If you get to that level. If you get to that level. You first gotta decide whether or not there's actually a conflict, whether it's a false conflict. Finally, district court talked about one state. You have to actually look and see if there's a problem with the policy in both states or multiple states. That wasn't done. Your Honor, respectfully, I suggest that the district court appears to have read the cases. The opinion summarizes. Well, they didn't mention. Hammersmith. Are you involved in the California action? Only in this sense, Your Honor. The cases, it was a misstatement that these cases, California was filed by the same council. California was filed independently by lawyers out there. We filed the cases here. Are you ultimately gonna run into the same issue that they ran into in California? No, no. They proceeded on different claims. Consumer protection laws out there. Not the claims that we are doing. They dropped, the counsel who were managing the case out there dropped for certain strategic reasons the claim for diminished value. That they did not, at the close of discovery, they did not have what the court believed was the requisite proof to establish damage class-wide. That is not the situation that we are in. It will not be the situation that we will be in. Because we will be able, when our discovery is done, which it is not, expert reports are submitted to produce credible evidence of class-wide injury. Indeed, Your Honor, I believe that one will be able to, it really is a matter of common sense that once this defect, or potential defect, was made public, nobody who will buy that plane, subject to this recall, would buy it without a credit for the amount of the replacement cost. There's an immediate diminution in value because of that. Nobody's right mind would buy the plane knowing that that crankshaft yet has to be replaced for a hit of $36,000. And as far as the replacement cost, for those who have already gone and incurred that, that's just a matter of arithmetic. That's producing the bills. When it comes time for the individualized damage issue for the class. But individualized damages are not a reason for non-certification. What did you submit to the court with respect to manageability? Because you did not submit a trial plan, did you? Judge did not ask for a trial plan. We did not submit a trial plan. We submitted in our certification papers the concept that as an alternative to the application of one state's law, Pennsylvania, that the court could do subclasses with special interrogatories. The jury finds it and the verdict could be molded based on that. Final question, going back to something that Judge Van Antwerpen was talking about a moment ago. The type of analysis done in this case, let me deal with unjust enrichment. When you deal with unjust enrichment, don't you first, the first prong is you have to find it's either no conflict, false conflict, or true conflict. Correct. And then if it's a true conflict, then you go to whether the interest analysis. It seemed like the court skipped the, whether it was no conflict, false conflict, or true conflict, went straight to the interest analysis. And I don't know if that's, can you do that here? Your Honor, my recollection of the district court's opinion is that... This is just on unjust enrichment. On unjust enrichment, the court said there are, here's what the plaintiff says are the differences. In fact, the court says, in fact, from a strict definitional viewpoint, there are other differences. But then the court went to the interest analysis saying that ultimately, while the conflict issue, the court said, while you have some different words, ultimately comes down to the same claim in most of the states. And we did say that there are eight states that then fall into three different subgroups beyond that. And I think the court recognized that, but ultimately said, it doesn't make a difference when you look at the interests of the states with the other claims. That they won't, Alabama, for example, the biggest state. Pennsylvania says, its airplane class members are entitled to compensation because of what happened in Pennsylvania with the shipments and the notices, et cetera. Alabama isn't going to say, no, don't give it to them. Our law of unjust enrichment is different. And Lycoming can't complain about being subject to Pennsylvania law for all the customers that it does business with. That's why this case is different from the Schutz case, for example. In that case, Phillips Petroleum hadn't done anything in Kansas. Kansas was just where the people filed the lawsuit. 97% of the people in that class had no connection with Kansas. There wasn't this common core of activity like there is in this case, emanating from the forum state to all of the ultimate users, all of the class members. That's what makes it fair in this case, different in Schutz. Thank you. Ms. Slavin. My remaining 35 seconds, Your Honor. Two things. I gave you more time at the outset, but. No, well, I appreciate that, but I will be brief. With respect to the California litigation filed by some other law firm, it was filed by the Mills and Ram law firm who also filed the plain time lawsuit. Mr. Roda is admitted pro hoc v. j. in that case in California. So to the extent there's been a suggestion that I've made a misrepresentation, that is not correct. And as for owners and lessees being included, the clip, I may have been derelict in some of my duties in the court below, but the one thing I did repeatedly point out is that this class was both over-inclusive and under-inclusive to the extent that persons with the legal obligation, aircraft lessees, are not included. So theoretically, an aircraft owner could be included in the class, have the service bulletin and the AD complied with, and never have a diminutive value claim or never incur any cost whatsoever for the replacement of the crankshaft. Thank you. Thank you very much. Thank you to both counsel. We'll take the matter under advisement. Judge Weiss, do you wish to confer now or do you wish to confer after our 2 p.m. oral argument? Why don't we confer now? Okay, I would ask that the courtroom, Michael, if we would have it cleared. And Joe, we'll come back in about four to five minutes then. Very good.